UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

STEPHEN H.,[1]

      **Plaintiff,**

v.

FRANK BISIGNANO,[2]
Commissioner of Social Security,

      **Defendant.**

Case No. 1:23-cv-4697
Magistrate Judge Norah McCann King

**OPINION AND ORDER**

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Stephen H. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

**I.     PROCEDURAL HISTORY**

    On January 6, 2021, Plaintiff filed his application for benefits, alleging that he has been disabled since January 1, 2018. R. 89, 98, 167–71. The application was denied initially and upon

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

1

reconsideration. R. 112–21, 124–33. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 135–36. ALJ Sylvia Alonso held a hearing on November 2, 2022, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 50–88. In a decision dated December 27, 2022, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 1, 2018, Plaintiff's alleged disability onset date, through the date of that decision. R. 33–44. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on May 10, 2023. R. 17–22. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On September 8, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 5.[3] On April 1, 2024, the case was reassigned to the undersigned. ECF No. 16. The matter is ripe for disposition.

II.     **LEGAL STANDARD**

    A.     **Standard of Review**

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

> factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

      Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent

4

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

**B.     Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.     ALJ DECISION AND APPELLATE ISSUES

Plaintiff met the insured status requirements of the Social Security Act through December 31, 2024. R. 35. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between January 1, 2018, his alleged disability onset date, and the date of the decision. R. 36.

At step two, the ALJ found that Plaintiff's degenerative disc disease was a severe impairment. *Id*. The ALJ also found that the following medically determinable impairments were not severe: chronic obstructive pulmonary disease; prostate hyperplasia; and depressive disorder. R. 36–38.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 38.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 39–44. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as a small business owner and/or marketing consultant. R. 43–44. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 1, 2018, his alleged disability onset date, through the date of the decision. R. 44.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 9; *Plaintiff's Reply Brief*, ECF No. 14. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing

legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 13.

IV.     **SUMMARY OF RELEVANT MEDICAL EVIDENCE**

In November 2021, Jeffrey Berman, M.D., Plaintiff's treatring physician, completed a three-page, check-the-box, and fill-in-the-blank medical source statement entitled, "Mental Assessment to Do Work-Related Activities." R. 454–56. Under the heading, "Making Occupational Adjustments," Dr. Berman opined that Plaintiff had "fair"[4] abilities to relate to co-workers, function independently, and maintain attention/concentration, but that Plaintiff had "poor or none"[5] abilities to follow work rules, deal with the public, or deal with work stresses. R. 454–55. Asked to describe Plaintiff's limitations and to include the medical/clinical findings that support this assessment, Dr. Berman responded: "Pt exhibits easy distractibility, difficulty following simple instructions & poor short term memory[.]" R. 455 (emphasis in original). Under the heading "Making Performance Adjustments," Dr. Berman opined that Plaintiff had a fair ability to understand, remember, and carry out simple job instructions, but poor/no ability to understand, remember, and carry out complex job instructions and to understand, remember, and carry out detailed, but not complex, job instructions. R. 455. Under the heading, "Making Personal – Social Adjustments," Dr. Berman opined that Plaintiff had a "good"[6] ability to maintain personal appearance; a "fair" ability to behave in an emotionally stable manner and "[r]elate predictable in social situations", but a "poor/none" ability to demonstrate reliability. *Id.* Asked when Plaintiff's limitations began, Dr. Berman responded, "m/p June 2019[.]" R. 456.

---

[4] "Fair" means that the "ability to function in this area is seriously or markedly limited and your patient cannot satisfactorily perform this activity independently, appropriately, effectively, and on a sustained basis in regular work setting at a competitive standard." R. 454.

[5] "Poor or none" means that there is "no useful ability to function in this area." R. 454.

[6] "Good" means that the "ability to function in this area is limited, but satisfactory." R. 454.

According to Dr. Berman, Plaintiff's impairments and/or treatment would, on average, cause him to be absent from work "significantly more than 3x/ month[.]" *Id*. (emphasis in the original). Asked to identify the medical/clinical findings that support this assessment, Dr. Berman responded: "Mental Status Exam & Mini Mental Status Exam demonstrate [] Emotional Lability, decreased Short Term Memory & ability to comprehend more than 2-step instructions[.]" *Id*.

## V. DISCUSSION

Plaintiff argues that the ALJ erred in evaluating Dr. Berman's opinions. *Plaintiff's Brief*, ECF No. 9; *Plaintiff's Reply Brief*, ECF No. 14. For the reasons that follow, Plaintiff's argument is not well taken.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

9

For claims filed after March 27, 2017,[7] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The applicable regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1). As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and

---

[7] As previously noted, Plaintiff's claim was filed on January 6, 2021.

nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The applicable regulation also requires the ALJ to articulate her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors.").

In the case presently before the Court, the ALJ determined at step four of the sequential evaluation process that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant could stand/walk for six hours in an eight-hour day and sit for six hours in an eight-hour day. The claimant could frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds. The claimant could frequently balance on level surfaces; frequently stoop and kneel; and occasionally crouch and crawl. The claimant should avoid concentrated exposure to fumes, gases, and other pulmonary irritants, and hazards, such as unprotected heights and moving mechanical parts.

R. 38. In reaching this determination, the ALJ found, *inter alia*, that Dr. Berman's medical source statement was unpersuasive, reasoning as follows:

> Dr. Jeffry A. Berman completed a medical source statement and assessed that the claimant had no useful ability to function in many of the domains assessed. He

11

> further opined that the claimant would be absent from work significantly more than three times per month due to his impairments (Exhibit 7F). The undersigned finds this opinion unpersuasive as it is overstated and inconsistent with the substantial objective evidence of record, which shows normal mental findings. For instance, treatment records describe the claimant as pleasant (Exhibit 1F/Pages 12, 20, 24, 35), alert, and fully oriented on examination with normal affect (Exhibit 1F/Pages 3, 6, 9, 12, 16, 20, 24, 28, 32, 35, 43, 44, 48; Exhibit 3F/Pages 15, 18, 29), normal speech (Exhibit 1F/Pages 6, 12, 20, 24, 32, 44, 48), and good eye contact (Exhibit 1F/Pages 12, 20, 24, 44, 48). Additionally, the claimant's insight and judgment were good (Exhibit 1F/Page 32; Exhibit 3F/Pages 20, 26), his memory was normal (Exhibit 3F/Page 20), and his thought process was logical, and goal directed (Exhibit 1F/Page 35). Dr. Berman's opinion is further inconsistent with overall record which shows that the claimant was able to participate in selling his business and home, get a divorce, purchase an RV, help care for his father who suffers from dementia, drives, and travels extensively between Florida, Michigan, and New Jersey.

R. 41.

Plaintiff challenges this evaluation, arguing that the ALJ violated the applicable regulation when she failed to address the supportability of Dr. Berman's opinion. *Plaintiff's Brief*, ECF No. 9, pp. 7–12; *Plaintiff's Reply Brief*, ECF No. 14, pp. 1–6. Plaintiff specifically points to Dr. Berman's mental examinations and related mental findings, *id.* at 11 (citing R. 455–56), and contends that this failure renders the ALJ's evaluation of Dr. Berman's opinion legally insufficient, and thus requires remand. *Id*.

At step four of the sequential evaluation, the ALJ addressed the consistency of Dr. Berman's opinion: The ALJ explained that the record shows normal mental findings. R. 41 (multiple citations to the record omitted). The ALJ further found that Dr. Berman's extreme limitations were inconsistent with Plaintiff's activities, such as "participat[ing] in selling his business and home, get[ting] a divorce, purchas[ing] an RV, help[ing] care for his father who suffers from dementia, driv[ing], and travel[ing] extensively between Florida, Michigan, and New Jersey." *Id*. The ALJ's finding that Dr. Berman's opinion was inconsistent with the record evidence enjoys substantial evidence in the record. *See* 20 C.F.R. § 404.1520c(c)(2); *Lowrey v.*

12

*Kijakazi*, No. CV 21-176, 2022 WL 2133568, at *1 n.1 (W.D. Pa. June 14, 2022) (granting the Acting Commissioner's motion for summary judgment where "the ALJ found that Plaintiff is less limited than what Dr. Schiller found considering her activities, noting that Plaintiff 'is able to take care of personal needs and grooming, exercise, go for walks, take care of household pets, prepare meals, complete household chores such as cleaning and laundry, shop in stores, go to the zoo, use public transportation, spend time with others, get along with family, friends, neighbors, and/or authority figures, use a computer, pay bills, count change, handle a savings and/or checking account, read, play games on her iPad, and watch television'"); *Newcomb v. Kijakazi*, No. 3:20-CV-01552, 2022 WL 178820, at *9 (M.D. Pa. Jan. 18, 2022) (affirming ALJ's denial of benefits where, *inter alia*, where the ALJ considered an opinion in conjunction with the claimant's "activities of daily living, including caring for his young son, managing his own personal care, shopping, mowing, cooking, cleaning, and driving, the ALJ found that '[w]hile none of these activities alone [are] dispositive, taken together they suggest that [the claimant] is capable of performing work activity on a sustained and continuous basis within the above parameters'") (citations omitted); *Caradine v. Kijakazi*, No. 1:21-CV-14, 2022 WL 20054867, at *14 (M.D. Pa. May 26, 2022), *report and recommendation adopted*, No. 1:21-CV-14, 2023 WL 3851974 (M.D. Pa. June 6, 2023) ("The ALJ stated that Dr. Plowman's opinion, which found only mild limitations, was consistent with the objective medical evidence showing normal mental status examination findings and no ongoing mental health treatment. The ALJ explained that Dr. Tardibuono''s opinion was not consistent with this evidence to the extent he found more than mild limitations in certain areas of mental functioning."). Indeed, Plaintiff does not challenge the ALJ's consistency finding. *See generally Plaintiff's Brief*, ECF No. 9; *Plaintiff's Reply Brief*, ECF No. 14.

It is true, however, that the ALJ did not address the supportability of Dr. Berman's opinion. R. 41. The Court has already explained that the applicable regulation requires that an ALJ address both the supportability and consistency of a medical opinion. 20 C.F.R. § 404.1520c(c). While the ALJ's failure to analyze the supportability of Dr. Berman's opinion was therefore error, the Court is not persuaded that it was harmful error. Remand is not required when it would not affect the outcome of the case. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005); *see also Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (noting that an ALJ's error would be harmless if it "could [not] have made any difference" in the ultimate outcome of the disability determination) (internal quotation marks and citations omitted). Notably, "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.... [T]he party seeking reversal normally must explain why the erroneous ruling caused harm." *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009). Here, although Plaintiff complains that the ALJ's error in failing to consider the supportability of Dr. Berman's opinion is harmful because Dr. Berman's opined limitations would have rendered him disabled, *Plaintiff's Brief*, ECF No. 9, pp. 11–12, Plaintiff does not explain how remand would change the outcome in light of the unchallenged determination that Dr. Berman's opinion is inconsistent with record evidence. *See generally id.*; *see also Plaintiff's Reply Brief*, ECF No. 14. In short, the Court is not persuaded that remand is required on this record. *See Shinseki*, 556 U.S. at 409–10; *Holloman*, 639 F. App'x at 814; *Rutherford*, 399 F.3d 546, 553.

For these reasons, the Court **AFFIRMS** the Commissioner's decision. The Court will issue a separate final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date:  September 12, 2025                           *s/Norah McCann King*
                                                      NORAH McCANN KING
                                           UNITED STATES MAGISTRATE JUDGE